UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ARTHUR A. ABSTON,                          )
                                           )
        *Plaintiff*,                       )
                                           )      Case No. 3:23-CV-134-CLC-DCP
v.                                         )
                                           )
MD VALI KHAIROLLAHI,                       )
RACHEL MOORE,                              )
OFFICER PURDY, *and*                       )
DUSTY LANGLEY,                             )
                                           )
        *Defendants*.                      )

## MEMORANDUM & ORDER

Plaintiff, a pretrial detainee[1] housed in the Loudon County Jail, has filed a pro se civil rights action against Defendants under 42 U.S.C. 1983 [Doc. 2], motion for leave to proceed *in forma pauperis* [Doc. 1], and motion to appoint counsel [Doc. 3].  For the reasons set forth below, the Court will grant Plaintiff's motion to proceed as a pauper, deny his motion to appoint counsel, dismiss Defendants Khairollahi and Purdy, dismiss Plaintiff's claims related to his grievance and furlough requests, and permit his claims for the denial of adequate medical care to proceed against Defendants Moore and Langley.

## I.    MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] that he lacks the financial resources to pay the filing fee.  Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

---

[1] Plaintiff does not disclose his custodial status in his complaint, but he is not listed as a current inmate in the publicly available database of the Tennessee Department of Correction. Tenn. Dep't of Corr., "Felony Offender Information," https://foil.app.tn.gov/foil/search.jsp (last accessed Apr. 17, 2023).  Accordingly, the Court assumes for present purposes that Plaintiff was a pretrial detainee at the time of the incidents alleged in his complaint.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

II.    <u>SCREENING OF COMPLAINT</u>

    A.    **Screening Standard**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, §§ 1915(e)(2)(B), 1915A. The dismissal standard articulated by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [§§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations giving rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well pleaded and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Plaintiff's Allegations

On June 29, 2022, Plaintiff complained to unidentified Loudon County Jail personnel about "painful lesions and ulcers in [his] mouth" [Doc. 2 at 3]. After three medical visits, he was prescribed Diflucan and nystatin, "but the infection never cleared up" [*Id.* at 4]. Nurse Moore sent Plaintiff to Dr. Vali Khairollahi, "who never looked at [Plaintiff's] mouth [but] just prescribed the same medications" [*Id.*]. Plaintiff saw the doctor again, but he did not look at Plaintiff's mouth and stated he would need to reference his textbooks [*Id.*].

On November 17, 2022, Plaintiff submitted another medical request to "the nurse," and she told Plaintiff she was attempting to get Plaintiff an appointment but that "nobody wants to see inmates" [*Id.*]. On December 6, 2022, Plaintiff sent a furlough request to Captain Dusty Langley,

3

but Langley never replied to the request [*Id.*]. The following day, December 7, 2022, Plaintiff filed a grievance concerning his right to medical care, and Dusty Langley got Plaintiff an appointment at Affordable Dentures [*Id.*]. The dentist at Affordable Dentures diagnosed Plaintiff with a "trench mouth[2]" infection and prescribed Diflucan and effervescent tablets to soak his dentures [*Id.*]. Plaintiff received the medication, but because the guards had to bring the effervescent tablets to him, Plaintiff "usually didn't get them" [*Id.*]. Therefore, Plaintiff was unable to follow the medical procedure prescribed by the dentist [*Id.*].

Plaintiff filed grievances on January 13, 2023, February 14, 2023, and March 10, 2023, concerning "the tablets and issues with [his] mouth" [*Id.*]. On January 21, 2023, Plaintiff filed a medical request, and Nurse Rachel Moore told Plaintiff that he had already been treated, the tablets were not her problem, and Plaintiff needed "to take it up with Captain Langley" [*Id.* at 5]. When Plaintiff spoke to Captain Langley, Captain Langley said he would "pass it on" to medical staff [*Id.*].

On February 17, 2023, Plaintiff filed a grievance about his medical issues and received no response [*Id.*]. When Plaintiff appealed the issue, Captain Langley, surrounded by other officers, pulled Plaintiff into the hall and told Plaintiff that if medical staff did not want to see him, then it was not Langley's "f***ing problem" [*Id.*].

On March 23, 2023, Plaintiff showed Nurse Moore and Officer Purdy "new lesions on most of [Plaintiff's] upper lip" [*Id.*]. Nurse Moore and Officer Purdy each stated that they did not see anything [*Id.*]. Plaintiff then advised Nurse Moore that he believed the infection had moved to his groin due to the new lesions there, and Nurse Moore stated, "I'm done here" [*Id.*].

---

[2] "Trench mouth is a severe gum infection caused by a buildup of bacteria in the mouth." Healthline, *Trench Mouth*, https://www.healthline.com/health/trench-mouth (last visited Apr. 17, 2023).

4

Plaintiff maintains that his mouth, lips, and tongue are covered with lesions and ulcers, and that this painful condition is "spreading every day" [*Id.*].

Aggrieved by these incidents, Plaintiff filed the instant suit asking the Court to award him treatment by a specialist and monetary damages from each Defendant [*Id.* at 6].

## C.     Analysis

Plaintiff is suing Defendants in both their official and individual capacities [*See* Doc. 3 at 1].  The Court will address Plaintiff's official-capacity claims before turning to each Defendant's individual liability.

### 1.     Loudon County

By suing Defendants in their official capacities, Plaintiff is essentially suing Loudon County itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

To maintain a claim against Loudon County, Plaintiff must allege facts from which this Court could infer that his constitutional rights were violated because of an unconstitutional policy or custom.  *See Monell*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs").  Here, Plaintiff has not alleged that he has been denied medical evaluation or treatment due to any policy or custom of Loudon County.  Accordingly, any claim against Defendants in their official capacities will be **DISMISSED**.

### 2. Individual Defendants

To state a claim against Defendants in their respective individual capacities, Plaintiff must adequately plead that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

### a. Grievance Response

Plaintiff maintains that he did not receive a response to a grievance he filed concerning his medical issues [Doc. 2 at 5]. To the extent Plaintiff intends this allegation as a separate claim for relief, the Court finds it fails to state a cognizable § 1983 claim because inmates have no constitutional right to a grievance procedure or in having their grievances resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, this claim will be **DISMISSED**.[3]

---

[3] Plaintiff also alleges that after he filed an appeal regarding his grievance, Defendant Langley spoke to him in an intimidating manner [Doc. 2 at 5]. It does not appear that Plaintiff intends this allegation as a separate constitutional claim. Nonetheless, out of an abundance of caution, the Court notes that verbal threats toward an inmate do not state a § 1983 claim. *See, e.g., Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983.").

### B.    Furlough Request

Plaintiff also complains that Defendant Langley failed to respond to his furlough request [Doc. 2 at 4]. However, Plaintiff has not pleaded any facts suggesting that Defendant Langley had an obligation to respond to Plaintiff's furlough request, or that Defendant Langley was the individual authorized to provide a response to any such request. Moreover, even if those facts were well pleaded, Plaintiff does not otherwise have a constitutionally protected right in obtaining furlough. *See McPeak v. Tennessee Dep't of Corr.*, 915 F.2d 1572, 1990 WL 153936, at *1 (6th Cir. Oct. 11, 1990) (table) (affirming determination that Tennessee law provides no liberty interest in furlough). Therefore, Defendant Langley's nonresponse to Plaintiff's furlough request fails to implicate a constitutional right, and this claim will be **DISMISSED**.

### C.    Medical Treatment

The gravamen of Plaintiff's complaint, however, is that Defendants have denied him adequate medical treatment. It is well settled that prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Deliberate indifference to those needs violates an inmate's constitutional rights. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).

Because Plaintiff is presumably a pretrial detainee, his claims are analyzed under the Fourteenth, rather than the Eighth, Amendment. *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021). This distinction is relevant because the Fourteenth Amendment requires that pretrial detainees not be subjected to punishment prior to a determination of guilt. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot

7

be punished at all, much less 'maliciously and sadistically.'" (citing *Ingraham v. Wright*, 430 U.S. 651, 671–672, n.40 (1977); *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989))). Therefore, to state a claim that Defendants exposed him to punishment by failing to obtain adequate medical care for him, Plaintiff must show that (1) he had a sufficiently serious medical need, and (2) each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 315–16 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596) (alterations in original).

As to the first component, a medical need is deemed sufficiently serious if it has been diagnosed by a doctor as requiring treatment or is so obvious that even a lay person would recognize the need for medical attention. *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). A defendant displays the requisite culpability to satisfy the second component by acting with "more than negligence but less than subjective intent—something akin to reckless disregard." *Brawner*, 14 F.4th at 596 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

The Court finds Plaintiff's allegations for the period beginning June 2022 and extending through December 7, 2022, fail to state a claim upon which § 1983 relief may be granted. During that time, Plaintiff complained of painful mouth lesions, was prescribed medications to treat this condition by the facility doctor, and was ultimately evaluated by a free world dentist who prescribed one of the same medications as the facility doctor [*See, e.g.*, Doc. 2 at 3–4]. These facts do not suggest that any Defendant acted with reckless disregard to Plaintiff's condition, but rather that Defendants engaged in a concerted effort to obtain relief for Plaintiff. Thus, even if Plaintiff were potentially misdiagnosed or not initially treated in a manner he desired, such an allegation is insufficient to state a claim for deliberate indifference. *See, e.g.*, *Gabehart v. Chapleau*, No. 96-

5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) ("Misdiagnoses, negligence, and malpractice are not, however, tantamount to deliberate indifference."). Inasmuch as Plaintiff's complaint levies no allegations of wrongdoing against Defendant Khairollahi beyond his treatment of Plaintiff in 2022, Defendant Khairollahi will be **DISMISSED**.

The Court also finds Plaintiff's allegations insufficient to state a claim against Defendant Officer Purdy. Plaintiff alleges that he showed Nurse Moore and Officer Purdy his lip lesions on March 23, 2023, and that each stated they did not see anything [Doc. 2 at 5]. However, Officer Purdy cannot be faulted for relying upon Nurse Moore's medical judgment as to the necessity for medical intervention, especially as Plaintiff's complaint is devoid of facts to suggest that Officer Purdy had the ability to intervene in Plaintiff's medical care and failed to do so. *See, e.g.*, *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (holding it is not "unconstitutional for municipalities and their employees 'to rely on medical judgments made by medical professionals responsible for prisoner care'" (quoting *Ronayne v. Ficano*, No. 98-1135, 1998 WL 183479, at *3 (6th Cir. Mar. 15, 1999))). Therefore, Defendant Purdy will be **DISMISSED** from this action.

Plaintiff also contends, however, that he did not consistently receive the effervescent tablets prescribed by the dentist, which prevented him from following the prescribed protocol, and that his ulcers and lesions continued to spread [Doc. 2 at 4–5]. He maintains that he advised both Nurse Rachel Moore and Captain Langley of his worsening condition, and that each refused to intervene to obtain medical treatment for Plaintiff despite their apparent ability to do so [*Id*.]. Therefore, the Court finds Plaintiff's allegations sufficient to allow a plausible inference that Defendants Moore and Langley denied Plaintiff's right to constitutionally adequate medical care. The Court will allow this claim to **PROCEED** against Defendants Moore and Langley.

III.   **MOTION TO APPOINT COUNSEL**

Plaintiff also filed a letter to the Clerk requesting a lawyer, which the Court construes as a motion to appoint counsel [Doc. 3]. Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[a]ppointment of counsel in a civil case is not a constitutional right[,]" but rather a "privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). In determining whether "exceptional circumstances" exists, the Court considers "the complexity of the case and the ability of the plaintiff to represent himself." *Cavin v. Michigan Department of Corrections*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d at 601).

The Court finds that this case does not contain complex legal issues and, at this time, it appears that Plaintiff may adequately represent himself. Accordingly, the Court finds that no exceptional circumstances exist that warrant the appointment of counsel, and Plaintiff's motion [Doc. 3] will be **DENIED**.

IV.   **CONCLUSION**

For the reasons set forth above:

1.     Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.     The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

3.     The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4.     Plaintiff has set forth a plausible claim of inadequate medical care against Defendants Moore and Langley;

5.     The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Moore and Langley;

10

6.	Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

7.	At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshals Service for service, *see* Fed. R. Civ. P. 4;

8.	Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

9.	Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service.  If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10.	All other claims and Defendants are hereby **DISMISSED**;

11.	Plaintiff's motion for the appointment of counsel [Doc. 3] is **DENIED**; and

12.	Plaintiff is **ORDERED** to immediately inform the Court and Defendants their counsel of record of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.  Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

/s/ _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

11